Electronically Filed
Intermediate Court of Appeals
29230
31-JAN-2012
11:51 AM

NO. 29230

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I


SEASIDE ESTATES, LP; THE SCUDDER GILLMAR TRUST;
THE STANLEY F. GILLMAR TRUST; QUEEN EMMA LAND COMPANY,
fka THE QUEEN EMMA FOUNDATION, Petitioners-Appellants,
v.
WTC OWNERS, LLC, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(SPECIAL PROCEEDINGS NO. 08-1-0115)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Reifurth, J.;
and Leonard, J., concurring separately)

Petitioners-Appellants Seaside Estates, LP; The Scudder Gillmar Trust, and The Stanley F. Gillmar Trust (collectively "Gillmar Trusts"); and Queen Emma Land Company, formerly known as The Queen Emma Foundation ("QELC") (collectively "Lessors") appeal from the June 2, 2008 Order Granting in Part and Denying in Part [Lessors] Petition for Order Confirming Arbitration Award and for Award of Prejudgment Interest, Filed on April 2, 2008 ("Order"), of the Circuit Court of the First Circuit ("Circuit Court").[1] On appeal, Lessors contend that the Circuit Court erred when it denied their request for prejudgment interest due, allegedly, to an incorrect interpretation of the terms of two separate leases between the Gillmar Trusts and Respondent-Appellee Waikiki Trade Center Investors, LLC[2] ("WTCI" or "Lessee"), and QELC and WTCI, respectively ("the Leases").

---

[1] The Honorable Karen S. S. Ahn presided.

[2] Pursuant to an order of this court dated August 4, 2010, WTC Owners LLC ("WTC") was substituted as Respondent-Appellee in place of WTCI. Consequently, we refer hereafter to WTC in place of WTCI.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we affirm the Order and resolve the appeal as follows:

The Circuit Court did not err in concluding that WTC was not liable to pay pre-judgment interest under the Leases on the difference between what Lessee would have paid under the new minimum annual rent and what it did pay under the old minimum annual rent, as calculated from the beginning of the new rental period through the date of the timely payment of the difference following the arbitrators' decision. Section 2.02 of the Leases ("Section 2.02") provides in relevant part:

> The appraisers . . . shall appraise and determine said fair market value and the then going rate of return as aforesaid. In the event the appraisers shall render their decision after the commencement of the period for which the minimum annual rent is being determined, minimum annual rent shall be payable at the rate in effect for the prior period until their decision is rendered, *but the new minimum annual rent established by such appraisal shall be effective retroactively to the commencement of the period in question, and the Lessee shall make up any deficiency with the next payment of minimum annual rent.* Lessor and Lessee shall each pay the fees of its own appraiser, attorneys and witnesses and shall each pay one-half (½) of all other proper costs and expenses of the appraisal.

(Emphasis added.)

The term "deficiency" is not defined in the Leases. To the extent that the word is unclear, the canon of construction *noscitur a sociis* ably guides us to our conclusion. *See State v. Dowling*, 125 Hawai'i 406, 410 n.4, 263 P.3d 116, 120 n.4 (App. 2011) ("*Noscitur a sociis* is Latin for 'it is known by its associates' and is '[a] cannon [sic] of construction holding that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it.'" (first brackets in original) (citing BLACK'S LAW DICTIONARY 1160-61 (9th ed. 2009))).

As the Circuit Court recognized, the Leases are sophisticated, comprehensive contracts. Furthermore, the Leases are laden with detailed provisions intended to protect the parties should a number of eventualities come to pass. Section 2.02 is itself a comprehensive guide for the parties and defines the proper procedure to follow, and the liabilities of the parties, should a new minimum annual rent not be determined by

2

the date of the new rental period.  Section 2.02 provides for the allocation of appraiser, attorney, and witness fees and other costs associated with appraisal.  It does not, however, make any mention of interest.

Interest, however, is addressed elsewhere in the Leases.  Section 15.03 of the Leases, found in Article XV which gives the Lessors multiple rights *in the event of Lessee's default*, specifically provides for the payment of interest:

> Interest.  Lessee shall pay to Lessor, on demand, interest at the rate of twelve per cent (12%) per annum on all sums payable by Lessee to Lessor pursuant to the provisions hereof *from the due date until paid*.

(Emphasis added.)  Lessors could have negotiated for inclusion of a similar term requiring the payment of interest on the unpaid difference of rent within Section 2.02; the absence of such a provision is telling.

Lessors argue that interest must be a part of "any deficiency" because the new minimum annual rent is "effective retroactively."  However, the fact that the new minimum annual rent applies retroactively does not mean that any higher rent was "due" with the preceding rental payments.  To the contrary, the process provided for in the Leases required Lessee to pay the rent based on the old minimum annual rent until the arbitrators made their decision — that is, the Lessors were never contractually entitled to the use of the money equal to the difference in rental rates during the time between the new rental period and the payment of rent following the appraisal.  If the Lessors intended for interest to attach to the difference in rent, they needed to make that intent more explicit in the Leases.

Reading the contract as a whole and paying particular attention to the context in which the term appears in Section 2.02, we hold that "deficiency" only refers to the difference between what Lessee would have paid under the new minimum annual rent versus what it had been paying under the old minimum annual rent and does not include pre-judgment interest.

Lessors seek pre-judgment interest under Section 15.03.  However, the recovery of interest is only available under Section

15.03 when the subject sum is past due. In this case, there is no dispute that Lessee paid the deficiency in minimum annual rents with the next payment of minimum annual rent following the arbitrators' decision. Thus, the payment of the deficiency was not made after its due date as defined in Section 2.02. As a result, Lessors are not entitled to pre-judgment interest under Section 15.03 of the Leases.

The cases cited by Lessors in support of their position – *Gadd v. Kelley*, 66 Haw. 431, 667 P.2d 251 (1983), *Loyalty Dev. Co. v. Wholesale Motors, Inc.*, 61 Haw. 483, 605 P.2d 925 (1980), and *Waialua Agric. Co. v. Oahu Ry. & Land Co.*, 19 Haw. 446 (Haw. Terr. 1909) – are distinguishable. These cases stand for the proposition that rents retroactively owed based on a rent arbitration are subject to pre-judgment interest after they become due. *See Gadd*, 66 Haw. at 445-46, 667 P.2d at 260; *Loyalty Dev.*, 61 Haw. at 489-90, 605 P.2d at 929; *Waialua Agric.*, 19 Haw. at 449-50. In this case, however, Section 2.02 states a due date for payment of the deficiency with which the Lessee complied. Thus, there was no past-due rent owed by Lessee on which to award pre-judgment interest.

In their motion to confirm below, Lessors contended that they were entitled to pre-judgment interest under Hawaii Revised Statutes ("HRS") § 478-2 (or its predecessor, HRS § 478-1). Although Lessors do not appear to make that argument on appeal, they reference us to cases holding that pre-judgment interest was warranted under the statute. *See Gadd*, 66 Haw. at 445-46, 667 P.2d at 260; *Loyalty Dev.*, 61 Haw. at 489-90, 605 P.2d at 929; *Waialua Agric.*, 19 Haw. at 449-50. To the extent that Lessors claim entitlement to pre-judgment interest under HRS § 478-2, it is only available on a written instrument when the money owed is past-due. HAW. REV. STAT. § 478-2(1). Since, as noted, the deficiency based on the rent arbitration was not past-due at the time it was paid, the Circuit Court did not err in failing to award pre-judgment interest under the statute.

Finally, Lessors' argument that the construction of the Leases we have adopted would give Lessees an incentive to delay the arbitration process in the future is not persuasive. Section

4

2.02 provides several safeguards against delay, including intervention by the Circuit Court if certain time limits are not met.

Therefore, the Circuit Court's June 2, 2008 Order is affirmed.

DATED: Honolulu, Hawaiʻi, January 31, 2012.

Chief Judge

Associate Judge

I concur in the result.

Associate Judge

On the briefs:

William C. McCorriston,
Joel D. Kam, and
Becky T. Chestnut
(McCorriston Miller Mukai
 MacKinnon LLP)
for Petitioners-Appellants

James T. Paul,
Corey Y.S. Park, and
Ronald N.W. Kim
(Paul Johnson Park & Niles)
for Respondent-Appellee